<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LISA BLACKMAN,** *on behalf of herself individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>**NORTHEAST SPINE & SPORTS MEDICINE, LLC**,<br><br>　　　　　　　　　　　Defendant.<br><br>**NORTHEAST SPINE & SPORTS MEDICINE, LLC**,<br><br>　　　　　　　　　　Third-Party Plaintiff,<br><br>　　　　　　v.<br><br>**COMPASSMSP, LLC**,<br><br>　　　　　　　　Third-Party Defendant. | Civil Action No. 24-7022 (ZNQ) (JTQ)<br><br>**OPINION** |

**<u>QURAISHI, District Judge</u>**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Third-Party Defendant CompassMSP, LLC ("Compass" or "Third-Party Defendant") on June 27, 2025. (ECF No. 41.) Compass filed a memorandum of law in support of its Motion. ("Moving Br.," ECF No. 41-2.) Third-Party Plaintiff Northeast Spine & Sports Medicine, LLC ("Northeast Spine" or

1

"NESSM" or "Third-Party Plaintiff") filed an Opposition (ECF No. 48), to which Compass replied (ECF No. 50).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Third-Party Defendant's Motion.

I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

    A. **Procedural History**

On May 8, 2024, Plaintiff Lisa Blackman ("Main Plaintiff") filed a putative class-action lawsuit against Defendant/Third-Party Plaintiff Northeast Spine in the Superior Court of New Jersey alleging violations of certain HIPAA privacy and security rules, Federal Trade Commission guidelines, and negligence and breach of implied contract. (ECF No. 1 at 2–3.) Northeast Spine removed that action to federal court on June 11, 2024, and subsequently filed a motion to dismiss the complaint. (ECF No. 4.) This Court granted-in-part and denied-in-part Northeast Spine's motion. (ECF No. 14.) Thereafter, Northeast Spine filed a third-party complaint against Compass. ("TP Compl.," ECF No. 18.) Compass then filed the present Motion to Dismiss, which is now fully briefed. (ECF Nos. 41, 48, 50.)

    B. **Background**

Northeast Spine is a medical practice "specializing in orthopedic surgery, neurosurgery, pain management, sports medicine, chiropractic physical & occupational therapy, acupuncture and massage." (TP Compl. ¶ 2.) Compass is an Information Technology ("IT") company that offers services to "improve your security, and more with [its] comprehensive IT managed, co-managed, and cybersecurity and compliance services." (*Id.* ¶ 7.) Compass markets to the healthcare industry

and claims to be the "Leading Managed IT and Cybersecurity for Healthcare Companies." (*Id.* ¶ 8.)

On January 7, 2017, Northeast Spine entered into a contract with Greenpoint Business Solutions ("Greenpoint" or "GPS"), whereby Greenpoint would provide IT security, maintenance, compliance, and risk management to Northeast Spine (the "Services Agreement"). (*Id.* ¶ 30.) The Services Agreement provided for an "Outsourced Chief Technology Officer" and required Greenpoint to "[p]roactively monitor, manage and maintain critical components of NESSM's IT infrastructure, including both onsite hardware and remote resources," "[k]eep NESSM's Operating System software up-to-date with recent stable software releases, updates and Patches" and to "[p]rovide ongoing technical oversight and planning services to assist NESSM to better leverage technology to support their business operations." (*Id.* ¶¶ 33–34 (alterations in original).) The Services Agreement further states that Greenpoint "will manage Anti-Virus/Anti-SPAM software and definitions on workstations and servers," and "[a]ll monitoring and management will be done using GPS's MSP (Managed Services Provider) software." (*Id.* ¶ 35 (alteration in original).) According to Northeast Spine, the Services Agreement also includes "the monitoring of critical servers, network devices & intersite connectivity (Site to Site VPN) at ALL current sites." (*Id.*)

In 2018, Compass acquired Greenpoint and assumed "all duties, obligations, liabilities and responsibilities under" the Services Agreement. (*Id.* ¶ 39.) Following the acquisition, Compass and Northeast Spine continued to work together and renewed the Services Agreement on an annual basis. (*Id.* ¶ 41.)

Northeast Spine, however, suffered a ransomware attack that resulted in the compromise of personal identifiable information ("PII") and protected health information ("PHI") of Northeast Spine's patients (the "Breach Incident"). (*Id.* ¶ 54.) As alleged, "this [Breach Incident] occurred

3

as a direct result of Compass' failure to provide Northeast Spine the agreed-upon IT services including IT security that it was required to provide under" the Services Agreement. (*Id.* ¶ 55.)

After the Breach Incident, Northeast Spine alleges that "Compass attempted to remove itself from the [Services] Agreement going forward and pressed Northeast Spine to enter into a new services agreement (the "Purported Agreement")." (*Id.* ¶ 62.) As alleged, the Purported Agreement was an attempt by Compass to "water down" the indemnification provisions and its own responsibilities. (*Id.* ¶ 63.) Northeast Spine claims that Compass leveraged the Breach Incident and pressured Northeast Spine into entering the Purported Agreement. (*Id.* ¶ 76.) Northeast Spine further claims that Compass failed to incorporate material provisions into the final draft of the Purported Agreement which would have memorialized the parties' intent. (*Id.* ¶ 78.) Compass also allegedly failed to disclose facts, information, and evidence demonstrating its culpability related to the ransomware event that it should have disclosed to Northeast Spine. (*Id.* ¶ 81.)

Northeast Spine now brings nine causes of action: (1) breach of contract; (2) negligence; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) contractual and common law indemnification; (6) contribution; (7) fraudulent inducement under common law and the New Jersey Consumer Fraud Act; (8) negligent misrepresentation; and (9) declaratory judgment.

## II.  SUBJECT MATTER JURISDICTION

The Court has original jurisdiction over the underlying claims against Northeast Spine pursuant to 28 U.S.C. § 1332(d) given the diversity of the proposed class and the value of the parties' dispute meets the jurisdiction requirement. (ECF No. 13 at 3.) The Court has

4

supplemental jurisdiction over Northeast Spine's third-party claims pursuant to 28 U.S.C. § 1367(a).

### III.  LEGAL STANDARD

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting

5

the motion to dismiss into one for summary judgment" under Rule 56. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

## IV.   DISCUSSION

Northeast Spine's claims generally fall into three categories: (1) contract-based claims related to the Breach Incident (Counts I, III, and V); (2) tort-based claims (Counts II, IV, V, and VI); and (3) claims related to the negotiation of the Purported Agreement (Counts VII, VII, and IX). The Court will discuss each category below.

### A.   Contractual Claims

#### 1.   Breach of Contract (Count I)

A party alleging a breach of contract under New Jersey law must allege that: (1) the parties entered into a contract containing certain terms; (2) that plaintiff did as was required by them under the contract; (3) that defendant did not do what was required of them under the contract; and (4) that defendant's breach caused a loss to plaintiff. *See Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016).

Here, Northeast Spine has adequately pled the existence of a valid contract between the parties. (Compl. ¶¶ 39–41.) Northeast Spine has also adequately pled that it fulfilled its contractual obligations under the Services Agreement. (*Id.* ¶ 91.) Compass does not appear to dispute the sufficiency of these allegations in its Motion.

Instead, Compass argues that Northeast Spine has failed to allege a breach of the Services Agreement, or, alternatively, that any alleged breach of the Services Agreement caused the Breach Incident. (Moving Br. at 7.) According to Compass, the third-party complaint only contains two alleged breaches: failure to create secure file storage locations and failure to implement multi-factor authentication. (*Id.*) In response, Northeast Spine maintains that the third-party complaint contains numerous allegations regarding Compass's breach of the Services Agreement in addition

6

to the breaches discussed in Compass's Motion. (Opp. at 8–10.) In reply, Compass argues that Northeast Spine's third-party complaint fails to plead a causal relationship between the Breach Incident and Compass's conduct. (Reply at 2.) In other words, Compass claims that there are no allegations to suggest that anything it did (or did not do) caused the Breach Incident. (*Id.*)

After a review of the third-party complaint, the Court is satisfied that Northeast Spine has adequately pled a breach of the Services Agreement. The Services Agreement specifically states that Compass would "[c]reate secure file storage locations where only authorized users will have access." (TP Compl. ¶ 48 (alteration in original).) The Breach Incident undoubtedly resulted in unauthorized users gaining access to Northeast Spine's systems (*id.* ¶¶ 53–54), which is sufficient to support a breach of the Services Agreement at this stage of the proceeding. *See In re American Fin. Res., Inc. Data Breach Litig.*, Civ. No. 22-1757, 2023 WL 3963804, at *9 (D.N.J. Mar. 29, 2023) (holding that a contractual promise to "protect[] the privacy and security" of customers' information supported a breach-of-contract claim following a data breach). Moreover, the Services Agreement also required Compass to "monitor, manage and maintain critical components of NESSM's IT infrastructure;" "[k]eep NESSM's Operating System software up-to-date with recent stable software releases, updates and Patches;" and "[p]rovide ongoing technical oversight and planning services to assist NESSM to better leverage technology to support their business operations." (*Id.* ¶ 98.) As alleged, Compass breached the Services Agreement by failing to implement multi-factor authentication and VPN access. (*Id.* ¶ 96.) These purported failures by Compass, at least at this stage of the proceeding, are sufficient to plead a breach of the Services Agreement because they suggest that Compass may not have been properly updating or providing technical oversight to Northeast Spine, as it was required to do under the Services Agreement.

Contrary to Compass's argument, these breaches are also sufficient to establish a causal relationship. Based on the well-pled allegations, it is plausible to infer that had Compass implemented better security systems or created secure file locations, as was required under the Services Agreement, the Breach Incident would not have occurred. Accordingly, Northeast Spine has sufficiently alleged a breach of contract claim.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

In New Jersey, "[e]very contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002) (citation omitted). To sustain a claim for breach of the implied covenant of good faith and fair dealing, "a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017) (citation omitted). There can be a breach of the implied covenant of good faith and fair dealing even though a party's performance does not violate an express provision of the contract. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assoc.*, 182 N.J. 210, 226 (2005). However, "[a] breach of the implied covenant of good faith and fair dealing differs from a literal violation of the contract." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 389 (D.N.J. 2015). "A plaintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing where it would be duplicative of its breach of contract claim." *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, Civ. No. 14-4209, 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015). Although a plaintiff may plead their claims in the "alternative," a breach of implied duty claim may still be dismissed "[w]here it is undisputed that a valid and unrescinded contract governs the

conduct at issue" and "when the two asserted breaches basically rest on the same conduct." *Express Dynamics, LLC*, 150 F. Supp. 3d at 389–91.

Here, Northeast Spine alleges that Compass acted in bad faith by "providing insufficient and indeed—negligent and reckless—IT Services to Northeast Spine."  (TP Compl. ¶ 120.) Compass argues that this claim should be dismissed because it is duplicative of its breach of contract claim.  (Moving Br. at 8.)  Northeast Spine's Opposition only addresses this argument in a footnote, simply claiming that its breach of implied covenant of good faith & fair dealing claim is adequately pled "[f]or the same reasons listed in Section A," which addressed its breach of contract claim.  (Opp. at 13 n.3.)

Despite Northeast Spine's unsupported statement to the contrary, it does not allege any basis for the breach of the implied covenant of good faith and fair dealing that is different from its bases for breach of contract.  Rather, the grounds upon which Northeast Spine's claim for breach of the implied covenant of good faith and fair dealing is based are duplicative of those it relies on for its breach of contract claim.  That is, both claims rest on the allegations that Compass provided Northeast Spine with insufficient IT services.  Accordingly, Northeast Spine's claim for breach of the implied covenant of good faith and fair dealing will be dismissed as duplicative of its claim for breach of contract.  *See Cummins, Inc.*, 2015 WL 1119475, at *13 (dismissing claim for breach of implied covenant of good faith and fair dealing brought alongside a similar claim for breach of express warranty).

      3.    <u>Contractual Indemnification (Count V)</u>[1]

Compass argues that Northeast Spine's "claim for contractual indemnification is premature at this stage of the litigation."  (Moving Br. at 9.)  Compass further asserts that there are no

---

[1] The Court discusses common law indemnification in Section IV B(3) below.

allegations demonstrating how or why it is partially liable for the underlying cause of action. (*Id.*) In response, Northeast Spine argues that there is no requirement for there to be a final judgment or recovery prior to a claim for indemnification. (Opp. at 15.) Northeast Spine further argues that the third-party complaint contains sufficient allegations demonstrating Compass's liability. (Opp. at 16.) The Court agrees with Northeast Spine.

In New Jersey, a claim for indemnification may arise when a contract explicitly provides for indemnification. *See Symbiont Sci. Eng'g and Constr., Inc. v. Ground Improvement Servs., Inc.*, 723 F. Supp. 3d 363, 385 (D.N.J. 2024). Generally, indemnification "shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *Id.* Here, the Services Agreement specifically states that Compass "shall hold [Northeast Spine] harmless from all suits, claims, actions, damages, or loses whatever, resulting from any act or omission of the Indemnifying Party, its employees, agents and sub-contractors in its performance hereunder." (TP Compl. ¶ 131.) As alleged, Compass failed to adequately secure Northeast Spine's systems and implement security measures, which ultimately led to the data breach. (*Id.* 132–33.) These allegations are sufficient to support a claim for contractual indemnification.

The case that Compass cites in support of its argument that this claim is premature is inapposite. In *Blackman & Co. v. GE Bus. Fin. Servs., Inc.*, the court was deciding whether it should remand the matter to state court. Civ. No. 15-7274, 2016 WL 1702043, at *1 (D.N.J. Apr. 28, 2016.) There, the defendants removed the complaint based on diversity of citizenship, arguing that the plaintiff had fraudulently joined the non-diverse defendants and that they should not be considered for purposes of establishing diversity jurisdiction. *Id.* at *2. The court found that the claim for indemnification was "completely separate" from the claim against the main defendant,

10

such that resolution of the underlying claim would not resolve whether the non-diverse defendants would have to indemnify the main defendant. *Id.* at *5. Here, in contrast, if Northeast Spine is found primarily liable for Main Plaintiff's underlying claims, then it is plausible that Compass may need to indemnify Northeast Spine. Accordingly, Northeast Spine has adequately pled a claim for contractual indemnity.

### B. Tort Claims

The Court will next discuss Northeast Spine's claims for negligence (count II), unjust enrichment (count IV), common law indemnification (count V), and contribution (count VI). Compass argues that these claims are barred by the economic loss doctrine. (Moving Br. at 9–12.)

#### 1. Negligence and Unjust Enrichment

Under this doctrine, plaintiffs are prohibited "from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002). "In other words, whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs.*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009). A typical example of tortious conduct that is extraneous is a claim for fraud in the inducement because the tortious conduct preceded the formation of the contract. *See G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593 (D.N.J. 2014) (allowing common law fraud claim to survive that was based on "pre-contractual misrepresentations" that were made to induce a party to enter a contract); *see also Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002) ("[R]emedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff.")

11

Here, Northeast Spine's negligence action is based upon the parties' contractual relationship. As alleged, Compass failed to "adequately protect Northeast Spine's IT infrastructure" by allowing the ransomware attack to occur and by "failing to provide Northeast Spine adequate IT security protections." (TP Compl. ¶¶ 111–13.) These allegations undoubtedly stem from the contractual relationship between the parties and there are no allegations that Compass undertook any actions outside the scope of its contractual agreement.

Although Northeast Spine argues that Compass owed it a "duty of care" that was "separate and distinct from Compass' general duty to Northeast Spine to avoid causing foreseeable harm" (Opp. at 13), there are no plausible allegations to suggest that Compass owed Northeast Spine an independent duty outside of the Services Agreement. *See GSI Consultants, Inc.*, 170 N.J. at 315–16 (holding that tort claims fail where, despite their framing, they merely expand their contractual obligations). Northeast Spine contends that Compass, as Northeast Spine's Chief Technology Officer, had an independent duty of care. But Northeast Spine misinterprets the Services Agreement. The only reference to a "Chief Technology Officer" is found in the "Executive Overview" section of the Services Agreement, which simply describes GPS (Compass's predecessor company) and does not relate to the agreed upon services:

> GPS is an IT managed services and professional services firm based out of Princeton, NJ. GPS provides customers with a full range of IT hardware and service, as well as acting as an "Outsourced Chief Technology Officer" (CTO) for the customer.

("Services Agreement," ECF NO. 41-7 at 4.) Compass's obligations under the Services Agreement are found in a subsequent section and include "monitoring/management," "patch management," "technical support", "security/anti-virus management," "data protection and backup," and "moves/adds/changes." (*Id.* at 8–9.) So, while Compass may provide services that overlap with that of a Chief Technology Officer, it is not an actual officer of Northeast Spine that

12

would have an independent duty of care. Any relationship between Compass and Northeast Spine is therefore entirely contractual in nature. Accordingly, in the absence of a plausibly pled duty, the Court will dismiss Northeast Spine's negligence claim.

Northeast Spine's unjust enrichment claim fares no better. A claim for unjust enrichment "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *Jones v. Marin*, Civ. No. 07-0738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009); *see also Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) ("[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties.") As such, Northeast Spine's unjust enrichment claim will also be dismissed.

2. Contribution

"Under New Jersey law, the right of contribution exists among joint tortfeasors." *Symbiont*, 723 F. Supp. 3d at 384. The New Jersey Tortfeasor Contribution Law establishes that "the right of contribution exists among joint tortfeasors," which is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J. Stat. Ann. § 2A:53A-1-2. In other words, there is a "cause of action for contribution . . . when two or more persons become liable in tort to the same person for the same harm." *Lukacs v. Purvi Padia Design LLC*, Civ. No. 21-19599, 2023 WL 6439877, at *3–4 (D.N.J. Oct. 2, 2023).

Here, to claim that Compass is a joint tortfeasor, Northeast Spine must allege facts sufficient to allow this Court to infer that Compass could be liable to Main Plaintiff for negligence. *See Trustees of Princeton University v. Tod Williams Billie Tsien Architects, LLP*, Civ. No. 19-21248, 2021 WL 9667971, at *8 (D.N.J. Jan. 29, 2021). Northeast Spine has met this burden. As alleged, Compass provided inadequate services that resulted in Northeast Spine's patients' PII and PHI being obtained by unauthorized users. (TP Compl. ¶¶ 53–55.) These allegations ultimately

13

led to Main Plaintiff filing a Complaint against Northeast Spine for negligence. (ECF No. 1-4.) Based on these allegations, Northeast Spine has plausibly pled that Compass is liable to Main Plaintiff as a joint tortfeasor.

The cases cited by Compass are inapposite. In both *Meyers v. Heffernan* and *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, the courts dismissed the contribution claim against the third-party defendants because the claims in the underlying action against the third-party plaintiffs were contractual in nature. *See Meyers v. Heffernan*, Civ. No. 12-2434, 2014 WL 3343803, at *10 (D.N.J. July 8, 2014); *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, Civ. No. 00-2231, 2002 WL 2013925, at *2 (E.D. Pa. Aug. 29, 2002). Here, in contrast, the claims asserted against Northeast Spine/Third-Party Plaintiff are for negligence. (ECF No. 1-4.) As such, Compass could be held liable as a joint tortfeasor for the injuries caused to Main Plaintiff. Northeast Spine has sufficiently pled a claim for contribution.

        3.      <u>Common Law Indemnification</u>

In New Jersey, common law indemnification arises when there is a "special legal relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied indemnification." *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, Civ. No. 21-3712, 2025 WL 2778535, at *3 (D.N.J. Sept. 30, 2025). "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *Katz v. Holzberg*, Civ. No. 13-1726, 2013 WL 5946502, at *3 (D.N.J. Nov. 4, 2013) (citation omitted). A "longstanding business relationship" is not enough for there to be a "special legal relationship" between two parties. *Id.* at *3 n.4; *see also Ryan v. United States*, 233 F. Supp. 2d 668, 686 (D.N.J. 2002) ("A contract does not alone create a special relationship between the parties.").

Compass argues that Northeast Spine's common law indemnification claim fails because Northeast Spine's rights arise solely out of a contractual relationship. (Moving Br. at 8–9.) Northeast Spine responds only that its causes of action are based in both contract and tort. (Opp. at 15.) As previously discussed, however, the economic loss doctrine bars Northeast Spine's negligence and unjust enrichment claims. As such, there is only a contractual relationship between Compass and Northeast Spine. And because Northeast Spine has not alleged the existence of the requisite "special legal relationship," its common law indemnification claim must be dismissed. *See Ryan*, 233 F. Supp. 2d at 686 (dismissing common law indemnification claim where only a contractual relationship existed); *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 190 (1986) (finding no implied indemnification based on contract).

V.      **Purported Agreement Claims**

Compass argues that Counts VII (fraudulent inducement), VIII (negligent misrepresentation) and IX (declaratory judgment) should be dismissed under the doctrine of *forum non conveniens*. (Moving Br. at 12.) Compass further argues that, even if the Court does not dismiss those counts on *forum non conveniens* grounds, they should be dismissed because they fail to substantively state a claim for relief. (*Id.* at 17.) Because the Court agrees that Counts VII, VIII, and IX should be dismissed under the doctrine of *forum non conveniens*, the Court does not reach Compass's substantive arguments.

A *forum non conveniens* dismissal "is a determination that the merits [of a case] should be adjudicated elsewhere." *Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 432 (2007). Dismissal under this doctrine is appropriate "when considerations of convenience, fairness, and judicial economy so warrant." *Id.* In the absence of a forum selection

clause, the Third Circuit uses four factors to guide a court's analysis of whether a *forum non conveniens* dismissal is warranted:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017).

When a forum selection clause is present, however, this analysis changes. "[A] plaintiff's choice of forum in filing his or her lawsuit 'merits no weight,' and [courts] are not to consider any arguments about the parties' private interests—those 'weigh entirely in favor of the preselected [] forum.'" *Id.* (quoting *Atlantic Marine Const. Co., Inc. v. United States District Court for the Western Dist. of Texas*, 571 U.S. 49, 581–82 (2013) (citation modified)).  Accordingly, the remaining factors for the Court to consider are: (i) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable, and (ii) relevant public interest factors affecting the convenience of the forum. *See id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Hage v. American Board of Obstetrics and Gynecology*, Civ. No. 19-21198, 2020 WL 3056442, at *4 (D.N.J. June 9, 2020) (citation omitted). "[T]he party resisting the application of a forum-selection clause bears a heavy burden of demonstrating that the forum-selection clause should not be enforced." *Id.*

Here, the Purported Agreement contains a forum selection clause, which states:

> The parties hereby consent to the *exclusive jurisdiction* of any state or federal court located within the State of Connecticut, Hartford County, with respect to *any legal action, dispute or otherwise*, arising out of, related to, or in connection with this Agreement.

16

("Purported Agreement," ECF No. 41-8 § 10(f) (emphases added).)  According to Compass, this provision is mandatory, valid, and enforceable.  (Moving Br. 12–15.)  The Court agrees.

As a threshold matter, "[a] forum selection clause is enforceable only if it is mandatory—providing the sole forum available for resolution of the claims, rather than permissive—providing one of many possible fora." *Nitterhouse Concrete Prods. V. Dobco Group, Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018) (citing *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x. 82, 85 (3d Cir. 2006)).  "To determine whether a provision is mandatory, a court's paramount consideration is the intent of the parties, guided by the plain language of the agreement." *Id.* (citation modified). The forum selection clause in the Purported Agreement is clearly mandatory.  It provides that the parties consented to the "exclusive jurisdiction" of state or federal court in Hartford County, Connecticut.  (Purported Agreement § 10(f).)  And its application is broad, as it covers "any legal action, dispute or otherwise, arising out of, related to, or in connection with this Agreement."  (*Id.*) Thus, the forum selection clause is mandatory.

Moreover, the forum selection clause is also valid and enforceable.  "Federal law presumes forum selection clauses to be valid, but that presumption is overcome where the resisting party shows that enforcement would be unreasonable under the circumstances."  *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 233 n.14 (3d Cir. 2018) (citation modified).  "Enforcement is unreasonable where either the forum selected is so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court, or the clause was procured through fraud or overreaching."  *Id.* (citation modified).  "[T]he mere allegation of fraudulent conduct does not suspend operation of a forum selection clause." *MoneyGram Payment Systems, Inc. v. Consorcia Oriental, S.A.*, 65 F. App'x 844, 847 (3d Cir. 2003).  Instead, a party must show that the "forum selection clause is the result of fraud in the inducement of the forum-

17

selection clause itself." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklik Mfg. Co.*, 388 U.S. 395, 403–04 (1967)); *Mathews v. Rescuecom Corp.*, Civ. No. 05-4834, 2006 WL 414096, at *5 n.8 (D.N.J. Feb. 16, 2006) ("[A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract . . . [but] must show that the clause itself was the product of fraud or coercion."). Northeast Spine does not allege or argue that the forum selection clause was itself a product of fraud. Accordingly, the Court finds that the forum selection clause is valid and enforceable.

Perhaps more importantly, Northeast Spine has failed to demonstrate the "unusual circumstances" sufficient to defeat the forum selection clause in the Purported Agreement. In its Opposition, Northeast Spine contends that "Compass cites the wrong agreement to support its venue position." (Opp. at 17.) According to Northeast Spine, the Services Agreement is governed by New Jersey law and that, because many of the allegations in the third-party complaint purportedly arise from that agreement, adjudicating the matter in Connecticut would upend judicial economy. (*Id.* at 17–18.) This argument, however, ignores that Northeast Spine's claims assert two distinct causes of action: (1) claims relating to Compass's contractual actions as it relates to the Breach Incident; and (2) claims relating to the post-Breach Incident negotiation of the Purported Agreement. Northeast Spine's claims that relate solely to the negotiation of the Purported Agreement (Counts VII, VIII, and IX) are not contingent on whether Compass is separately liable for breach of contract of the Services Agreement.[2] As such, Northeast Spine has failed to meet its "heavy burden" to defeat enforcement of the forum selection clause in the

---

[2] Plaintiff relies on *Samuels v. Medytox Solutions, Inc.* to argue that a court, when faced with two conflicting forum selection clauses, should defer to the district that contains a majority of the factual allegations. (Opp. at 18.) In *Samuels*, however, the court was faced with two conflicting forum selection clauses that were executed on the same day and concerned the same causes of action. Civ. No. 13-7212, 2014 WL 4441943, at *1 (D.N.J. Sept. 8, 2014). Here, in contrast, the Purported Agreement and Services Agreement are unrelated in time and concern what the Court finds to be distinct causes of action.

18

Purported Agreement. *See Hage*, 2020 WL 3056442, at *4 (dismissing case where plaintiff failed to demonstrate that public interest factors weighed in favor of litigating in New Jersey).

Having determined that the forum selection clause is valid and enforceable, the only question that now remains is the appropriate remedy. Compass urges that the "Third-Party Complaint should be dismissed with prejudice under the doctrine of *forum non conveniens*." (Moving Br. at 17.) However, as the Court just explained, not all the claims brought by Northeast Spine are subject to the forum selection clause in the Purported Agreement. It is only appropriate to dismiss those claims subject to the forum selection clause. Likewise, dismissal with prejudice is not appropriate because that disposition would bar Northeast Spine from pursuing its claims in the more appropriate forum. *See Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001). Accordingly, the Court will take the unusual step of dismissing without prejudice only Northeast Spine's claims for fraudulent inducement (count VII), negligent misrepresentation (count VIII), and declaratory judgment (count IX).

## VI. CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Compass's Motion. An appropriate Order will follow.

Date: January 29, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
